UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ArcBest II, Inc., | No. 2:21-cv-00627-KJM-AC |
| Plaintiff, | ORDER |
| v. | |
| Nicholas Oliver, et al., | |
| Defendants. | |

Plaintiff asserts a California statute regulating the moving industry is preempted by federal law. Defendants move to dismiss, and both parties move for summary judgement. For the reasons explained below, the court **grants the motion to dismiss in part.** Additionally, the court **grants plaintiff's motion for summary judgment in part and grants defendants' motion for summary judgment in part**.

I.   BACKGROUND

    A.   Facts

Plaintiff ArcBest II, Inc., which does business as "U-Pack," is a "federally licensed . . . property broker and freight forwarder." First Am. Compl. (FAC) ¶ 17, ECF No. 11. U-Pack has been operating since 1997. *Id.* ¶ 2. It provides a customer with a container, "arranges for [the] container to be transported to the customer's new home[,] and the customer then unloads and unpacks the contents of the container without any help from U-Pack." *Id.* ¶ 31. U-Pack "charges

1

customers based on the volume of the container . . . not the weight of the property transported." *Id.* ¶ 35. Currently, U-Pack does "not facilitate any intrastate transportation" in California. *Id.* ¶ 32. It would do so if the State did not threaten "enforcement actions and penalties" under the Household Movers Act, California Business & Professions Code section 19225 *et seq*. *Id.* ¶ 9.

The Bureau of Household Goods and Services (BHGS) enforces the Household Movers Act. The Household Movers Act regulates "household movers," which it defines as "every corporation or person . . . engaged in . . . transportation of used household goods and personal effects over any public highway in this state." Cal. Bus. & Prof. Code § 19225.5(h). Brokers who help others in arranging said transportation are also considered household movers. *Id.* § 19225.5(a). The Household Movers Act only covers household movers who conduct moves fully within the state.

On January 26, 2021, the BHGS sent an enforcement letter to U-Pack to "cease operating [its] business in California [and] conducting moves into this state until the required valid [BHGS] permit has been obtained to operate/advertise as a household mover in this state." Jan. 26, 2021 Letter at 1, FAC Ex. A, ECF No. 11-1. The letter informed U-Pack that "failure to comply . . . may result in further enforcement action and . . . increasingly severe penalties," including administrative citations, criminal charges and civil penalties. *Id.* at 2. Prior to this, "U-Pack's interstate transportation services ha[d] never previously been subject to regulation by . . . [the BHGS]." FAC ¶ 2. U-Pack responded to the letter, claiming the Federal Aviation Administration Authorization Act (FAAAA) precluded BHGS from enforcing its regulations against U-Pack. *Id.* ¶ 43; Feb. 5, 2021 Letter at 4, FAC Ex. B, ECF No. 11-2. California's Department of Consumer Affairs (DCA) replied. DCA indicated it was a "misconception that the household mover . . . d[id] not require a [BHGS] permit if it only conduct[ed] interstate moves" and took the position that the FAAAA does not preempt state law. Feb. 12, 2021 Letter at 1–2, FAC Ex. C, ECF No. 11-3. U-Pack again asserted it did not need a permit. *See generally* Mar. 18, 2021 Letter, FAC Ex. D, ECF No. 11-4.

Plaintiff filed the operative complaint against the Chief of BHGS Nicholas Oliver; Director of the DCA Kimberly Kirchmeyer; Secretary of the California Business, Consumer

2

Services and Housing Agency Lourdes M. Castro Ramirez; Acting Attorney General Matthew Rodriquez;[1] and Governor Gavin Newsom. FAC ¶¶ 18–22. Plaintiff asserts three claims: (1) FAAAA preempts the Household Movers Act as to plaintiff's interstate services; (2) the Household Movers Act does not authorize enforcement of the statute's requirements against plaintiff as to its current interstate services; and (3) the FAAAA preempts the Household Movers Act as to plaintiff's planned intrastate services.

U-Pack originally sought a preliminary injunction against defendants, Compl. at 10–14, ECF No. 1; FAC ¶¶ 11–12, but the DCA and BHGS later issued letters saying U-Pack's interstate services were not subject to the requirements of the Household Movers Act. Apr. 15, 2021 DCA Letter, Not. of Withdrawal Ex. A, ECF No. 12-1; Apr. 15, 2021 BHGS Letter, Not. of Withdrawal Ex. B, ECF No. 12-2. As a result, U-Pack withdrew the motion. Pl. Not. of Withdrawal at 1, ECF No. 12.

The parties have filed three motions. First, defendants move to dismiss, which plaintiff opposes. Mot. to Dismiss (MTD), ECF No. 15; MTD Opp'n, ECF No. 22; MTD Reply, ECF No. 24. Second, plaintiff moves for summary judgment. Pl. Mot. Summ. J. (MSJ), ECF No. 17. Lastly, defendants move for summary judgment, Cross MSJ, ECF No. 20; Cross MSJ Opp'n, ECF No. 23; Reply, ECF No. 24.[2]

The court heard arguments from Thomas Hungar, appearing for plaintiff, and Kristin Liska, appearing for defendants, at a September 17, 2021 hearing held via videoconference.

**B.     Statutory Background**

**1.     The FAAAA**

"In 1994, Congress enacted the [FAAAA] . . . so that all companies using motor carriers and air carriers received the same protections, regardless of how they were organized." *California Trucking Ass'n v. Bonta*, 996 F.3d 644, 655 (9th Cir. 2021) (citing H.R. Conf. Rep.

---

[1] The individual defendants are sued in their official capacity. Since this action was filed, Attorney General Rob Bonta has taken office. Accordingly, he is substituted in place of the previously named defendant Matthew Rodriquez. Fed. R. Civ. P. 25(d).

[2] Defendants filed a combined reply that addressed the Motion to Dismiss and Cross Motions for Summary Judgment.

No. 103-677, at 87 (1994)). "The principal purpose of the FAAAA was to prevent States from undermining federal deregulation of interstate trucking through a patchwork of state regulations." *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 644 (9th Cir. 2014) (citation and internal quotation marks omitted). The FAAAA directs that "no State or . . . intrastate agency . . . shall enact or enforce any law . . . relating to [the] intrastate rates, intrastate routes, or intrastate services of any freight forwarder or broker." 49 U.S.C. § 14501(b)(1). Section 14501(c) provides "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of . . . any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). The Supreme Court has said "the phrase 'related to' embraces state laws 'having a connection with or reference to' carrier 'rates, routes, or services,' whether directly or indirectly." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (citation omitted). "[L]aws that are significantly related to rates, routes, or services, even indirectly [ ] are preempted, and those that have only a tenuous, remote, or peripheral connection to rates, routes, or services [ ] are not preempted." *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 643 (9th Cir. 2014) (citation omitted). This section has two express preemption exceptions that are relevant herein resolving the summary judgment motions: the safety exception[3] and the household goods exception.[4]

### 2.   Household Movers Act

In 2017, the California Legislature passed the Household Movers Act, which requires household movers to obtain a state permit for intrastate transportation of household goods. FAC ¶ 29.   The BHGS enforces the Household Movers Act.  The Household Movers Act regulates "household movers" which it defines as "every corporation or person . . . engaged in . . . transportation of used household goods and personal effects over any public highway in this

---

[3] The section "shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization." 49 U.S.C. § 14501(c)(2)(A).

[4] The section "does not apply to the intrastate transportation of household goods." 49 U.S.C. § 14501(c)(2)(B).

state." Cal. Bus. & Prof. Code § 19225.5(h). Brokers, "person[s] engaged . . . in the act of arranging . . . intrastate transportation," are also considered household movers. *Id.* § 19225.5(a). The Household Movers Act only covers household movers who conduct moves fully within the state. The Household Movers Act forbids household movers from transporting household goods or arranging for said transportation unless the household movers receive a permit from BHGS or have a preexisting permit from the Public Utilities Commission. *Id.* § 19237.[5]

## II.   MOTION TO DISMISS

Defendants seek dismissal on the grounds that (1) plaintiff's claims regarding U-Pack's current interstate services are moot, MTD at 8; (2) three defendants have Eleventh Amendment immunity, *id.* at 8; and (3) requiring plaintiff to "obtain a permit for its planned intrastate services is not preempted" under the FAAAA, *id.* at 12. These arguments are also the basis of defendants' cross motion for summary judgment. The court adopts to address defendants' first two arguments under the motion to dismiss, and the third under the cross motions for summary judgment.

### A.   Legal Standard

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). The court assumes all factual allegations are true and construes "them in the light most favorable to the

---

[5] Section 19237 of the Household Movers Act states:

(a) A household mover shall not engage, or attempt to engage, in the business of the transportation of used household goods and personal effects by motor vehicle over any public highway in this state, . . . unless both of the following are satisfied:

(1) For transportation of household goods and personal effects entirely within this state, there is in force a permit issued by the bureau . . . .

(2) For transportation of household goods and personal effects from this state to another state or from another state to this state, there is in force a valid operating authority issued by the Federal Motor Carrier Safety Administration.

Cal. Bus. & Prof. Code § 19237(a).

nonmoving party." *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019). If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court's consideration of documents attached to a complaint or incorporated by reference or matters of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

  **B.**  **Analysis**

    **1.**  **Mootness**

  Defendants argue plaintiff's interstate claims—that the FAAAA preempts the Household Movers Act as to its interstate services, and that the Household Movers Act does not reach plaintiff's current interstate services—are moot because plaintiff's current activity is not subject to the Household Movers Act, as DCA and BHGS communicated to plaintiff through the April letters. MTD at 9 (noting plaintiff's business practice puts it outside the definition of a "broker" and "household mover" governed by the law) (citing Cal. Bus. & Prof. Code § 19225.5(a), (h)). Plaintiff disagrees.

  "A case becomes moot . . . when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation and marks omitted). "[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued . . . [o]therwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off . . . ." *Id.* (citation omitted). "But voluntary cessation can yield mootness . . . 'if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). The party claiming mootness bears a "heavy burden." *Id.*

/////

In evaluating a claim against a government entity, the court "presume[s] that a government entity is acting in good faith when it changes its policy, . . . but the Government . . . still must bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again." *Id.* (citations omitted). "[A] policy change not reflected in statutory changes or even in changes in ordinances or regulations will not necessarily render a case moot, . . . but it may do so in certain circumstances." *Rosebrock*, 745 F.3d at 971 (citations omitted). The Ninth Circuit has explained that mootness of this type is more likely if:

> (1) the policy change is evidenced by language that is broad in scope and unequivocal in tone, (2) the policy change fully addresses all of the objectionable measures that [the Government] officials took against the plaintiffs in th[e] case, (3) th[e] case [in question] was the catalyst for the agency's adoption of the new policy, (4) the policy has been in place for a long time when we consider mootness, and (5) since [the policy's] implementation the agency's officials have not engaged in conduct similar to that challenged by the plaintiff[.]

*Id.* (citations and marks omitted). The court is less likely to find a policy change moots a claim when the "new policy . . . could be easily abandoned or altered in the future." *Bell v. City of Boise*, 709 F.3d 890, 901 (9th Cir. 2013).

In its April 15, 2021 letter, BHGS withdrew its "January 26, 2021 . . . letter to U-Pack Sacramento alleging that [U-Pack] was an unlicensed mover operating without a valid state permit . . . and ordering U-Pack to cease operations . . . in its entirety." Apr. 15, 2021 BHGS Letter. BHGS explained the decision to withdraw the previous letter was "[b]ased on further review." *Id*. The DCA further explained that "[t]he Bureau, which administers and enforces the Act, [ ] determined that the January 26, 2021, letter was issued in error" and that sworn statements and U-Pack's representations revealed that U-Pack's current business did not fall under the regulation of the Household Movers Act. Apr. 15, 2021 DCA Letter at 1. Yeaphana LaMarr, Policy Manager at BHGS who is responsible for "developing regulatory framework for enforcement . . . and interpreting the Bureau's authority under the Household Movers Act," LaMarr Decl. ¶ 2, ECF No. 20-5, explained the implications of the policy change. In an email, LaMarr informed BHGS staff that they "were no longer to investigate or enforce the Household

/////

Movers Act [against] brokers that solely performed interstate moves because such brokers did not constitute 'household movers' under state law." *Id*. ¶ 14.

The *Rosebrock* factors weigh against finding mootness here. On the one hand, defendants' contention that plaintiff and similar entities are not subject to the statute is "broad in scope and unequivocal in tone." *White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000). This case appears to be a "catalyst for the agency's adoption of the new policy" as the change was adopted following the agency's interaction with U-Pack and the filing of this suit. *Rosebrock*, 745 F.3d at 972. Furthermore, DCA and BHGS "have not engaged in conduct similar to that challenged by the plaintiff," namely holding brokers with only interstate services subject to the Household Movers Act since the policy change. *Id*.; LaMarr Decl. ¶ 16.

However, the policy has not been in place long, weighs against finding the claim is moot. *See Rosebrock*, 745 F.3d at 971–72. Additionally, the policy does not fully address all of plaintiff's claims. *See Bell*, 709 F.3d at 900. It addresses neither the claims of federal preemption nor how the "full range of regulatory requirements [apply] to U-Pack's contracted motor carriers." MTD Opp'n at 8 (citing FAC ¶¶ 23–27, 32, 69–83, Ex. E at 1–3). Defendants have not carried their burden of establishing it is "'absolutely clear'" they "could not revert" to their previous policy. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017). Specifically, although LaMarr instructed staff to "close any active investigations into brokers with solely interstate services and to refrain from any future investigations absent express authorization," this leaves the door open for BHGS staff to grant express authorization and thus allows for similar investigations and enforcement actions in the future. LaMarr Decl. ¶ 14. The court finds the claims are not moot.

**2.      Eleventh Amendment**

Defendants move to dismiss Governor Newsom, Director Kirchmeyer, and Secretary Castro Ramirez because they "lack the requisite connection to enforcement of the statute at issue." MTD at 8. Plaintiff does not object to dismissing Secretary Ramirez and Governor Newsom from this lawsuit. Hr'g Tr. at 22:12–16, ECF No. 26. Accordingly, Secretary Ramirez and Governor Newsom are dismissed with prejudice.

Turning to Director Kirchmeyer, defendants claim her "general supervisory authority over the [BHGS]" provides a basis for immunity. Mot. at 8. "The Eleventh Amendment generally bars the federal courts from entertaining suits brought by a private party against a state or its instrumentality in the absence of state consent." *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (citation omitted). "However, the Eleventh Amendment does not bar actions seeking only prospective declaratory or injunctive relief against state officers in their official capacities." *Id.* (citing *Ex Parte Young*, 209 U.S. 123, 155–56 (1908)) (citation omitted). The state officer sued by plaintiff "must have some connection with the enforcement of the [allegedly unconstitutional] act." *Ex Parte Young*, 209 U.S. at 157. "This connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Eu*, 979 F.2d at 704 (citation omitted). Courts look to state law to determine "whether and under what circumstances a particular defendant has a connection with the challenged state law." *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998).

Here plaintiff seeks only prospective declaratory and injunctive relief against the state officers, including Director Kirchmeyer, in their official capacities. *See* FAC Prayer for Relief. As Director of the DCA, Kirchmeyer has a direct "connection with the enforcement of the [challenged statute]." *Eu*, 979 F.2d at 704 (citation omitted); *see* Cal. Bus. & Prof. Code § 9810(a)(1) ("There is in the Department of Consumer Affairs a Bureau of Household Goods and Services, under the supervision and control of the director [of DCA]. The director shall administer and enforce the provisions of . . . [the Household Movers Act]"). Director Kirchmeyer is therefore not entitled to immunity and the motion to dismiss is denied on this ground.

### III.    CROSS MOTIONS FOR SUMMARY JUDGMENT

Both parties move for summary judgment. Plaintiff argues the Household Movers Act is preempted by the FAAAA §14501(c), or in the alternative by § 14501(b). Pl. MSJ at 6. Defendants repeat the third principal argument in their motion to dismiss—that preemption does not apply. Cross MSJ at 9; MTD at 10–18. It is undisputed that the Household Movers Act does not apply to plaintiff's interstate work. Thus, summary judgment in favor of plaintiff on this

9

claim is appropriate. The court turns to plaintiff's claims about preemption and whether either party is entitled to summary judgment on the issue of preemption based on intrastate activity.

### A. Legal Standard

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

### B. Analysis

Plaintiff contends the BHGS's licensing regime under the Household Movers Act is preempted by § 14501(c) of the FAAAA, which regulates motor carriers and freight forwarders and brokers, respectively. Under the Supremacy Clause, if federal and state law conflict, the former "preempts" the latter. *See* U.S. Const. art. VI, cl. 2. There are three ways in which preemption occurs. First, preemption occurs through an express act of Congress. *Arizona v. United States*, 567 U.S. 387, 399 (2012). Second, preemption occurs where Congress intends to occupy and govern a particular field or subject matter. *Id.* Finally, preemption occurs where state and federal laws conflict; "[t]his includes cases where compliance with both federal and state regulations is a physical impossibility, and . . . where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (internal citations and marks omitted). No matter "the type of preemption involved—express,

10

field, or conflict—'[t]he purpose of Congress is the ultimate touchstone of pre-emption analysis.'" *Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 724 (9th Cir. 2016) (citing *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992)). In "determining the F[AAAA]'s preemptive scope, [the court is] bound by a long line of precedent that requires [it], among other things, to consider Congresses' deregulatory and pre-emption-related objectives in enacting the F[AAAA]." *Bonta*, 996 F.3d at 654 (citation and internal marks omitted).

### 1. Preemption

"Under [the] FAAAA, a state or local law is preempted if: (1) the law is related to a price, route, or service of any motor carrier with respect to the transportation of property, and (2) the law does not fall under one of FAAAA's regulatory exceptions." *Tillison v. Gregoire*, 424 F.3d 1093, 1098 (9th Cir. 2005) (citing 49 U.S.C. § 14501(c)). The two regulatory exceptions are the safety exception and the household goods exception. 49 U.S.C. § 14501(c).

Defendants argue both exceptions apply to the challenged provisions as explained below; however, the court finds the household goods exception is not applicable to U-Pack. In a 2005 legislative note Congress explained that "[t]he provisions of title 49 . . . that relate to the transportation of household goods apply only to a household goods motor carrier." *Ellenburg v. PODS Enterprises, LLC*, 473 F. Supp. 3d 1095, 1101 (E.D. Cal. 2020) (finding this note to be an "unambiguous directive"); *see also* Pub. L. No. 109–59, § 4202(c), 119 Stat. 1144 (2005). The definition of a household goods motor carrier "does not include a motor carrier . . . [that] provides transportation of household goods in containers or trailers that are entirely loaded and unloaded by an individual (other than an employee or agent of the motor carrier)." 49 U.S.C. § 13102(12)(C). U-Pack does not fall within the definition of a "household goods motor carrier," as its service is limited to transporting and then dropping off "a cube container or trailer"; all loading and unloading is done by the customer. FAC ¶¶ 31, 50(a). Thus, because U-Pack is not a "household goods motor carrier," the household goods exception does not resolve the preemption question. The court now considers whether each of the challenged provisions relate to price, route, or service, and if so, whether the safety exception applies.

/////

The safety exception to preemption grants the states the ability to impose regulation that is "genuinely responsive to safety concerns." *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 442 (2002); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1053–55 (9th Cir. 2009) (involvement of "general public health concerns . . . alone does not bring the regulation within the ambit of the motor vehicle safety exception" and "[i]t is not enough to say that the provision might enhance efficiency, or reduce some kind of negative health effects."). "This standard requires that [the court] consider intent." *Am. Trucking Ass'n*, 559 F.3d at 1053–54. The Ninth Circuit sets out a two-part inquiry:

> The first step examines any "expressions of legislative intent," including (1) the particular language of the statute or regulation being challenged, and any explicit statutory or regulatory findings in the provision; and (2) available legislative or regulatory history. . . . Once a safety motivation is identified, the second step looks to "the existing record evidence" to determine whether there is a "logical" or "genuine" connection between the regulation and the safety justification, or, instead, whether the purported safety justification is a pretext for undue economic regulation. The more attenuated or speculative the connection, the more likely it will be that a court will find the purported safety motives "illusory or pretextual" and that the safety justification will not withstand scrutiny.

*California Tow Truck Ass'n v. City & Cnty. of San Francisco (CTTA II)*, 807 F.3d 1008, 1019–20 (9th Cir. 2015) (citation omitted). "[M]erely because a safety rationale is not documented does not necessarily mean the safety exception cannot apply, . . . as [s]ometimes a safety justification is so obvious that it need not be stated—intent can be obvious from the subject of the regulation itself, as well as from the surrounding circumstances." *Id*. at 1020 (citation and marks omitted).

Plaintiff argues the California Legislature did not intend to invoke the safety exception because "[t]he 'particular language of the' . . . Act says nothing about safety." Pl. MSJ at 12 (quoting *CTTA II*, 807 F.3d at 1020). The Household Movers Act expressly states "[i]t is the purpose of this chapter to do all of the following:"

> (1) Preserve for the public the full benefit and use of public highways consistent with the needs of commerce without unnecessary congestion or wear and tear upon those highways.

> (2) Secure to the people just, reasonable, and nondiscriminatory rates for transportation by household movers operating upon the highways.

> (3) Secure full and unrestricted flow of traffic by motor carriers over the highways that will adequately meet reasonable public demands by providing for the regulation of rates of all household movers so that adequate and dependable service by all necessary household movers is maintained and the full use of the highways is preserved to the public.
>
> (4) Promote fair dealing and ethical conduct in the rendition of services involving or incident to the transportation of household goods and personal effects.

Cal. Bus. & Prof. Code § 19229.1(a). However, the Household Movers Act also explicitly says "[p]rotection of the public shall be the highest priority for the [BHGS] in exercising its licensing, regulatory, and disciplinary functions." Cal. Bus. & Prof. Code § 19234.1; *see also id.* ("protection of the public shall be paramount" to other interests). "The presence of such mixed motives . . . does not preclude the application of the safety exception, provided that the State's safety motives are not pre-textual." *CTTA II*, 807 F.3d at 1020. Therefore, the safety exception may apply to the provisions plaintiff is challenging here. The court examines each challenged provision in turn, as the proper analysis of an FAAAA preemption challenge to a comprehensive regulation must be conducted on a "provision-by-provision basis." *Id.*

### a) Permit

As noted above, the Household Movers Act requires household movers to obtain a permit. To obtain a permit, a mover must submit an application to BHGS "containing information prescribed by the [B]ureau, which is verified under oath," and must "attest in the application to facts demonstrating that the applicant is not barred by law or court order from acting as a household mover." Cal. Bus. & Prof. Code § 19238(a). The permit process also requires the payment of a fee and the obtainment of adequate protection against liability. *Id.* § 19248(a). Ultimately the BHGS "shall issue a permit only to those applicants who it finds have demonstrated that they possess sufficient knowledge, ability, integrity, and financial resources and responsibility to perform the service within the scope of their application." *Id.* § 19239(g).

The permit process also requires a background check and determination by the BHGS "that the applicant is otherwise suitable to be issued a permit, and granting the permit would not compromise public safety." *Id.* § 19239(f). BHGS "may refuse to issue a permit if it is shown that an applicant . . . has committed any act constituting dishonesty or fraud," "committed any act

13

that . . . would be grounds for a suspension or revocation of the permit," "misrepresented any material fact on the application," or "was convicted of an offense that is substantially related to the qualifications, functions, or duties of the business or profession." *Id.*. The permit requirement is directly connected to U-Pack's services as it affects whether it "can arrange for, or its contracted motor carriers can provide, transportation of customers' property to, from, or within California." Pl. MSJ at 7; *see* Cal. Bus. & Prof. Code § 19237(a)(1).

The Ninth Circuit and other courts have upheld licensing regimes based on the State's safety regulatory authority. *See, e.g.*, *CTTA II*, 807 F.3d at 1026–28; *United Motorcoach Ass'n v. City of Austin*, 851 F.3d 489, 491 (5th Cir. 2017); *Galactic Towing, Inc. v. City of Miami Beach*, 341 F.3d 1249, 1252-53 (11th Cir. 2003). All elements of the Household Movers Act's permitting scheme—fees, enforcement, and testing requirements—are surviving by virtue of the safety exception to preemption. First, as it relates to permit fees, the Ninth Circuit in *CTTA II* recognized fee requirements "'directly support[ing] the Permit Scheme's other requirements'" have a sufficient nexus to the permissible permit requirement to fall within the safety exception to preemption. 807 F.3d at 1027; *see also* Cross MSJ at 15–16. Second, as it relates to enforcement, *CTTA II* also recognized penalty provisions fall within the safety exception because without them, "the permit requirement would be a dead letter." 807 F.3d at 1028. The Household Movers Act establishes a scheme to enforce the permitting requirement and accompanying regulations, which is "likewise integral" to the Act's permit requirement. *Id.*; *see* Cal. Bus. & Prof. Code § 19277. Lastly, the court finds the testing requirement, which requires a household mover "to establish his or her knowledge and ability to engage in business as a household mover by examination," *id.* § 19239(a), is sufficiently connected to public safety as it aims to "minimize the risks to safety posed by household movers," MTD at 17; Cal. Bus. & Prof. Code § 19239(a). The permit regime thus falls within the safety exception and is not preempted.

### b) Rate Regulation

The Household Movers Act establishes that "[t]he [BHGS] shall establish or approve maximum or minimum or maximum and minimum rates to be charged by household movers." Cal. Bus. & Prof. Code § 19253(a). BHGS's regulation of rates is preempted as it is related to the

prices and services of U-Pack Pl. MSJ at 9. Defendants concede that its regulating of rates does not constitute a valid safety regulation. Reply at 4. Accordingly, this provision is preempted. Therefore, the court must consider whether the section is severable, if not the entire Household Movers Act is invalidated.

As the Household Movers Act does not have an express severability clause, *see generally* Cal. Bus. & Prof. Code § 19225 *et seq.*, severability turns on application of California law, *CTTA II*, 807 F.3d at 1030. In the absence of a severability clause, as is the case here, the court considers whether the provision is "grammatically, functionally, and volitionally separable." *Cal. Redevelopment Ass'n v. Matosantos*, 53 Cal. 4th 231, 271 (Cal. 2011) (citation omitted); *see also CTTA II*, 807 F.3d at 1030. "Grammatical separability, also known as mechanical separability, depends on whether the invalid parts can be removed as a whole without affecting the wording or coherence of what remains." *Matosantos*, 53 Cal. 4th at 271 (citation and internal marks omitted). Functional separability depends on whether the remainder of the statute can stand on its own. *See id.* "Volitional separability depends on whether the remainder would have been adopted by the legislative body had the latter foreseen the partial invalidation of the statute." *Id.* (internal quotation marks and citations omitted). Volitional severability also exists where the remaining provisions "constitute[ ] a completely operative expression of the legislative intent . . . and are not so connected with the rest of the statute as to be inseparable." *Nat'l R.R. Passenger Corp. v. Su*, 289 F. Supp. 3d 1130, 1139 (E.D. Cal. 2017) (quoting *Santa Barbara Sch. Dist. v. Superior Ct.*, 13 Cal. 3d 315, 331 (1975).

The court finds the Household Movers Act rates provision is grammatically severable as it is self-contained in the California Business and Professions Code section 19253(a). Additionally, severing this provision does not interfere with the functionality of the statute because the BHGS can still "enforce the other regulations such as the permit, display, insurance, and workers compensation requirements." Reply at 8. Regarding volitional separability, plaintiff argues that "rate regulation was the principal purpose of the statute." Opp'n Cross MSJ at 13 (citing Cal. Bus. & Prof. Code § 19229.1(a)(2)–(4)). Two of the Household Movers Act's four objectives concern rate regulations: "it is the purpose of [the Act] to" . . . "secure to the people just,

reasonable, and nondiscriminatory rates for transportation," as well as "secure full and unrestricted flow of traffic . . . by providing for the regulation of rates of all household movers." Cal. Bus. & Prof. Code § 19229.1(a)(2)–(3). However, defendants argue "[t]o the extent that any particular provision is preempted, . . . the others are severable" because "the Legislature would have chosen to retain the aspects of the Household Movers Act that are permissible." Cross MSJ at 19; *Weststar Relocation, Inc. v. Becerra*, No. CV 20-6915, 2021 WL 5828016, at *3 (C.D. Cal. Sept. 29, 2021) ("The California Legislature has articulated that the Household Movers Act, of which Section 19237(a) is a part, was enacted to preserve public highways, promote fair dealing and ethical conduct by household movers, and secure reasonable rates for its citizens and the full and unrestricted flow of traffic on California highways."); *see Doe v. Becerra*, No. 19-2105, 2019 WL 8227464, at *8 (C.D. Cal. Dec. 30, 2019) (relying on the statute's language and defendant's oral argument to determine that the legislative purpose of AB 290 was to prevent patient steering). The court finds the legislature would have likely enacted the Household Movers Act even without the section on rate regulation given the comprehensive nature of the Act's regulatory scheme, and the other stated purposes of the Act: to "[p]reserve for the public the full benefit and use of public highways" and "[p]romote fair dealing and ethical conduct in the rendition of services involving or incident to the transportation of household goods and personal effects." Cal. Bus. & Prof. Code § 19229.1(a)(1), (4). The rate regulations contained in Article 4 and California Cal. Business and Professions Code section 19229.1(a)(2) and (3) are thus severed.

### c) Display

The Household Movers Act requires "each household mover [to] display on each vehicle operated by it an identification symbol." Cal. Bus. & Prof. Code § 19236(a). Plaintiff argues this "requirement is tied directly to . . . transportation services" and the provision is therefore within the FAAAA's preemptive scope. Pl. MSJ at 9. The display requirements do not impact how a household mover can perform its service and therefore do not relate to service under 49 U.S.C. § 14501(c)(1). *Compare CTTA II*, 807 F.3d at 1028 (affirming that "permit possession and display requirements 'are not subject to FAAAA preemption'" as relating to service) *with Am. Trucking Ass'n, Inc. v. City of Los Angeles, Cal.*, 569 U.S. 641, 644 (2013) (holding "that the . . .

(FAAAA) expressly preempts [the requirement to] . . . display designated placards on its vehicles" in order to park at a port). Because the Household Movers Act's display requirement does not relate to a service under the FAAAA, this provision is not preempted.

### d) Insurance

The Household Movers Act imposes minimum insurance requirements. *See* Cal. Bus. & Prof. Code § 19248. Plaintiff contends this provision is related to services covered by the FAAAA "because the required insurance is designed to provide 'adequate protection against liability' for accidents incurred while transporting household goods." Pl. MSJ at 10 (quoting Cal. Bus. & Prof. Code § 19248(a)). Regardless of whether the provision relates to service, the safety exception expressly does not "restrict the safety regulatory authority of . . . a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements . . . ." 49 U.S.C. § 14501(c)(2)(A). The Household Movers Act's insurance provision falls squarely within the safety exception and therefore is not preempted.

### e) Recordkeeping

The Household Movers Act also imposes recordkeeping requirements on each "household mover . . . offering intrastate service," Cal. Bus. & Prof. Code § 19258(a), that may apply to plaintiff given its future business plans. The Household Movers Act requires "[e]ach household mover maintaining an office or place of business within this state and offering intrastate service [to] keep in that office or place of business all books, accounts, papers, and records required by the bureau to be kept within this state." *Id.* Those documents "shall not be, at any time, removed from the state except upon such conditions as the bureau prescribes." *Id*.

The Ninth Circuit has upheld a district court's finding that a different "recordkeeping requirement, S.F. Police Code § 3060, [was] saved from preemption by the FAAAA's safety exception" because "the recordkeeping requirement allow[ed] the police more easily to identify drivers and firms that have committed wrongdoing or misconduct." *CTTA II*, 807 F.3d at 1030; *see also id.* ("Without accurate records, it may be difficult for law enforcement to investigate alleged dangerous activities, thus reducing the Permit Scheme's potential for deterring unsafe conduct."). Plaintiff argues this case is distinguishable from *CTTA II* because the tow truck

business at issue in that case "inherently involve[d] safety risks" unlike U-Pack's business, which provides "purely consensual services." Opp'n MSJ at 14–15. Yet, accepting this distinction does not wholly eliminate safety concerns over driver and firm misconduct in the moving business. In *CTTA*, the Ninth Circuit explained the recordkeeping requirement operates "[l]ike the permit application requirements." *CTTA*, 807 F.3d at 1030. Eliminating the Household Movers Act's recordkeeping requirement would hinder enforcement meant to minimize safety risks. *See supra* III.B.1.a. Regardless of whether the recordkeeping provision relates to U-Pack's services, it falls within the safety exception, so it is not preempted.

## IV. CONCLUSION

The Clerk of the Court is directed to substitute Attorney General Rob Bonta in place of the previously named defendant Matthew Rodriquez.

Defendants' motion to dismiss (ECF No. 15) is **granted in part. The court finds defendants Ramirez and Newsom are entitled to immunity. The motion is granted as to them on those grounds, and defendants Ramirez and Newsom are dismissed with prejudice. The motion is otherwise denied.**

The court resolves, as a matter of law, the issue of whether each of the challenged provisions of the Household Movers Act is preempted as follows:

Plaintiff's motion for summary judgment (ECF No. 17) is **granted in part. The court finds the section regulating rates is preempted by the FAAAA. However, the court finds this provision is severable.**

The defendants' motion for summary judgment (ECF No. 20) is **granted in part as explained above; the remaining sections of the Household Movers Act are not preempted.**

As no question remains for a trier of fact, **the Clerk of Court is directed to close the case.**

IT IS SO ORDERED.

DATED: March 25, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE